**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| **HARBINGERS, LLC**,<br>495 Lowell Street,<br>Lexington, MA 02420, and<br><br>**ROBERT T. LEE,**<br>495 Lowell Street,<br>Lexington, MA 02420<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE ESCAL INSTITUTE OF ADVANCED TECHNOLOGIES, INC. d/b/a SANS INSTITUTE**,<br>1120 Rockville Pike, Suite 200,<br>North Bethesda, MD 20852<br>(Montgomery County)<br><br>*Defendant*. | Civil Action No. 8:26-cv-04683 |

**COMPLAINT**

Plaintiffs HARBINGERS, LLC ("Harbingers") and Robert T. Lee ("Mr. Lee") (together, "Plaintiffs"), by their undersigned counsel, allege as follows against Defendant The Escal Institute of Advanced Technologies, Inc. d/b/a SANS Institute ("SANS") (collectively, the "Parties"):

**NATURE OF THE ACTION**

1. This is an action by Harbingers and Robert T. Lee against Defendant SANS for trademark infringement, unfair competition, false designation of origin and declaratory judgment.

**PARTIES**

2. Plaintiff Harbingers is a Delaware limited liability company with its principal

place of business at 495 Lowell Street, Lexington, Massachusetts 02420. Harbingers owns the SIFT Mark defined in Paragraph 10 below. The SIFT Mark was registered in Harbingers' name.

3. Plaintiff Robert T. Lee is a resident and citizen of Lexington, Massachusetts. Mr. Lee created the SIFT Workstation and the SIFT Mark. Mr. Lee is the sole owner of Lee Consultants and Harbingers.

4. SANS is incorporated in Delaware and maintains its principal place of business in Montgomery County, Maryland. SANS sells cybersecurity training courses, including digital forensics and incident response courses, throughout the United States and abroad.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiffs' Lanham Act claim under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a). This Court also has jurisdiction over Plaintiffs' state-law unfair competition claim under 28 U.S.C. § 1338(b), and over Plaintiffs' remaining state-law claims under 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy. The Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

6. This Court has personal jurisdiction over SANS because SANS maintains its principal place of business in Maryland.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because SANS resides in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because SANS directs its course offerings, marketing, and website from its North Bethesda, Maryland headquarters, where a substantial part of the events giving rise to Plaintiffs' claims occurred.

## FACTUAL ALLEGATIONS

### Mr. Lee Created SIFT, Which is Owned by Harbingers

8. Mr. Lee has built a substantial professional reputation over 30 years in

cybersecurity through his investigative work, the forensic tools and methods he created, the courses he built, the terms he coined, and his leadership of the digital forensics and incident response community. He wrote one of the field's early timeline utilities, pioneered timeline analysis as an investigative technique, created the SIFT Workstation, and developed the forensic courses that trained a generation of investigators in law enforcement, government, and industry.

9. Mr. Lee coined the terms "digital forensics and incident response" (DFIR) and "cyber threat intelligence" (CTI), now the standard names for their disciplines. His peers have recognized his contributions: he was named Digital Forensic Examiner of the Year in 2009, received the award for Outstanding Contribution to Digital Forensics in 2010, and was inducted into the DFIR Hall of Fame in 2020. At a 2017 DFIR Summit, during the presentation of "The Most Lethal Forensicator We Know" award, he was referred to as the "Godfather of Digital Forensics," a description SANS itself later adopted in its own published materials, stating that Mr. Lee was "widely recognized as the Godfather of DFIR."

10. Mr. Lee has extended that reputation into artificial intelligence security, where he is now among the field's recognized leaders. He served as Chief AI Officer and Chief of Research at SANS Institute, chaired the SANS AI Cybersecurity Summit, and now serves as Chief AI Officer at Dragos. He created Protocol SIFT, which applies AI agents to forensic investigation on the SIFT Workstation, and launched the Find Evil! hackathon, which drew 3,400 entrants. He led working sessions with Gadi Evron on AI-driven vulnerability discovery that reached 800 chief information security officers, and he has authored research and frameworks on AI security that practitioners, executives, and policymakers rely on. He serves as a commissioner on the Commission on U.S. Cyber Force Generation. National media regularly seek his analysis of cybersecurity and AI, including The Wall Street Journal, CNN, The New

York Times, Wired, The Washington Post, CBS News, Forbes, and Axios. His standing in AI security rests on the same foundation as his standing in forensics: people trust his technical judgment because of the record behind it.

11. Individually and through Harbingers, Mr. Lee developed and used certain trademarks and associated digital assets to enhance his professional profile and expertise, promote his courses and programs, to develop course content, and to write, develop and promote his copyrighted code and tools for digital forensics and incident response.

12. In 2007, Mr. Lee created the SIFT Workstation, a collection of open-source digital forensics and incident response tools. SANS' own website confirms that "Rob Lee created the original SIFT Workstation in 2007," and states "Created by: Rob T. Lee." Ex. 1.

13. Since at least October 2007, Mr. Lee and Harbingers have used the SIFT trademark (the "SIFT Mark") in commerce in connection with developing, selling and advertising the SIFT Workstation software and the instructional materials that accompany it. The SIFT Mark is inherently distinctive because it immediately identifies Plaintiffs as the exclusive source of the SIFT Workstation and other materials and assets on which it is used, distinguishing it from its competitors.

14. Plaintiffs have used and continue to use the SIFT Mark both as a word mark and in a design form consisting of the word "SIFT" in capitalized, stylized font beneath an incomplete circle with two breaks:

15. The SIFT Workstation is distributed publicly through the open source SIFT project at github.com/teamdfir/sift. The SIFT project has been hosted in TeamDFIR, a GitHub organization Mr. Lee created, since December 2013. SANS has repeatedly been informed, and has acknowledged, that Mr. Lee created TeamDFIR and that Plaintiffs use it for the SIFT Workstation.

16. Plaintiffs have also used the SIFT Mark in other digital assets that they have created, developed, and used (collectively, the "Digital Assets"), including:

a. Domain names Plaintiffs own, including dfir.com, sansurl.com, for308.com, for610.com and for710.com;

b. The TeamDFIR GitHub organization;

c. The SANS Faculty Slack workspace; and

d. YouTube, X, Substack, and LinkedIn social media accounts.

17. On March 19, 2019, the U.S. Patent and Trademark Office ("USPTO") registered the SIFT Mark to Harbingers on the Principal Register, in standard characters (Serial No. 87840153; Registration No. 5,701,053) and in its design form (Serial No. 87875712; Registration No. 5,701,175), for "Open source computer software for use with incident responses and forensic tools designed to perform digital examinations" and "instructional user guides sold as a unit" in International Class 9. *See* Exs. 2 & 3. Both registrations identified SIFT's first use in commerce on October 11, 2007. SANS did not oppose either application.

18. On October 3, 2025, the USPTO cancelled Registration Nos. 5,701,053 and 5,701,175. Harbingers has continuing rights in the SIFT Mark arising from its prior and continuous use in commerce, including authorized use by SANS. Cancellation of the federal registrations did not, by itself, extinguish those rights.

19. Harbingers has since filed new applications to register the SIFT Mark, which were assigned Serial Nos. 50204380 (SIFT WORKSTATION logo with maze design), 50204390 (SIFT WORKSTATION in plain text), 50207438 (SIFT logo with maze design) and 50207421 (SIFT in plain text).

20. Mr. Lee, through Harbingers, has controlled the nature and quality of the goods offered under the SIFT Mark since its creation. Mr. Lee originated the SIFT Workstation and directed, funded, and controlled its development, including its tool selection, releases, update schedule, repository work, and branding. Mr. Lee or Harbingers also hired and paid the contractors who performed the technical development work for the SIFT Workstation, including the SIFT repository, packaging, update, and infrastructure work and SIFT Workstation branding.

**SANS Used the SIFT Mark With Harbingers' Permission**

21. Mr. Lee and SANS were parties to an Author Agreement dated March 19, 2013 (the "Author Agreement"). The Author Agreement licensed SANS to use the copyrighted course materials that Mr. Lee authored. Ex. 4 at § 3(a). It did not grant to SANS any rights in any trademark owned by Plaintiffs. Its only trademark provision runs the other way: it permitted Mr. Lee to use SANS' name and logo "for the purpose of performing Author's duties under this agreement, or advertising or promoting such services." *Id.* § 12.

22. SANS used the SIFT Mark in SANS courses with Harbingers' permission. SANS' Courseware Licensing Agreement (the "Courseware Licensing Agreement"), which SANS includes with its course materials and which is accessible on its website, states "SIFT® is a registered trademark of Harbingers, LLC. Used with permission." Ex. 5.

23. SANS' other publications likewise identify SIFT as a trademark of Harbingers and credit Mr. Lee as its creator. SANS' SIFT & REMnux poster, published on March 25, 2021,

states that the "SIFT Workstation,™ created by Rob Lee, is a powerful toolkit for examining forensic artifacts." Ex. 6. SANS' index of faculty-created free tools lists "The SIFT®" with Mr. Lee as its author. Ex. 7.

24. Mr. Lee became a SANS employee in January 2020, more than twelve years after he first used the SIFT Mark, which he and Harbingers have continued to use. On August 31, 2021, Mr. Lee and SANS signed a Modification & Transition Agreement (the "Transition Agreement") that transferred six days of FOR500 and six days of FOR508 courses (the "Courses") to SANS in exchange for a profit participation in SANS. The Transition Agreement provides that:

> 2. Purpose: The purpose of this Agreement is to transfer ownership, authorship, recording fees and logistics for the six days of FOR500 and the six days of FOR508 (FOR500 and FOR508 collectively to be referred to as the "Courses").
>
> 3. The Courses: Includes all of the material supplied to each student to teach the Courses, including:
> 1) Slides, content, and associated notes,
> 2) Datasets and Files,
> 3) Electronic Workbooks,
> 4) Labs,
> 5) Domains and URL Shorteners (FOR500.com and FOR508.com), and
> 6) Any other material related to or required for successful delivery of the Courses.
>
> * * *
>
> 4(a) Effective 1 September Robert T. Lee hereby assigns, surrenders, and transfers to SANS and is successors and assigns exclusively, all rights, title and interest of ownership and use, and copyrights and all contractual or legal intellectual property and other rights associated with the Courses;

Ex. 8.

25. Mr. Lee transferred FOR500 and FOR508 and their delivery materials, without transferring ownership of the separate SIFT Mark or the Digital Assets developed by Harbingers

and him. The Transition Agreement does not identify SIFT, SIFT source code, the SIFT Mark, or any of the Digital Assets by name. Harbingers, which held the SIFT registrations, was not a party to the Transition Agreement.

26. After the transfer, SANS continued to use the SIFT Mark with Harbingers' permission, as acknowledged in the Courseware Licensing Agreement on SANS' website. *See* Ex. 5; SANS Courseware Licensing Agreement, SANS Inst., https://www.sans.org/legal/courseware-licensing-agreement.

**SANS Claims the SIFT Mark as Its Own**

27. SANS terminated Mr. Lee's employment on October 23, 2026.

28. On November 3, 2026, Plaintiffs, through counsel, demanded that "[e]ffective immediately, SANS must cease use of the SIFT [M]ark in any new course, courseware or marketing material," and that "[w]ithin thirty (30) days of receipt of this letter, SANS must remove the SIFT mark from its existing courseware, virtual machines, website and marketing materials." Ex. 9. Counsel warned that continued "use of the SIFT mark after these deadlines will be unauthorized." *Id.*

29. As of the date of this filing, SANS has not provided a written response to Plaintiffs' November 3, 2026 letter. To Plaintiffs' knowledge, SANS has not taken any action on any of the requests or demands set forth in their November 3, 2026 letter.

**SANS Continues to Use the SIFT Mark**

30. SANS continues to use the SIFT Mark to advertise, promote, and sell its courses. SANS' course pages also reference the SIFT Mark and/or SIFT Workstation virtual machines, including without limitation:

- FOR478: Cyber Threat Intelligence Foundations

- FOR498: Digital Acquisition and Rapid Triage
- FOR500: Windows Forensic Analysis
- FOR508: Advanced Incident Response, Threat Hunting, and Digital Forensics
- FOR528: Ransomware and Cyber Extortion
- FOR572: Advanced Network Forensics: Threat Hunting, Analysis, and Incident Response
- FOR577: LINUX Incident Response and Threat Hunting

31. SANS charges thousands of dollars for each of these courses. For instance, SANS charges $8,780 for FOR508 in its OnDemand format.

32. Moreover, SANS has continued to use the SIFT Mark in connection with course-specific virtual machines and instructional materials offered to digital forensics and incident response professionals. Those offerings include materials identified as "SANS SIFT Workstation," "SANS Windows SIFT Workstation," and "SANS Linux SIFT Workstation." *See, e.g.*, FOR577: LINUX Incident Response and Threat Hunting | SANS Institute (www.sans.org/cyber-security-courses/linux-threat-hunting-incident-response).

33. SANS has also continued to use Mr. Lee's image and name in marketing and promoting its course offerings and its white papers, blog posts and event announcements. On its website alone, it uses his name and image 42 times:



34. Since its termination of Mr. Lee, SANS has also claimed ownership of and demanded that Plaintiffs cease using the Digital Assets described in Paragraph 16. SANS has, without Plaintiffs' permission and despite their objection, eliminated Mr. Lee's access to the TeamDFIR GitHub organization he created for the SIFT Workstation and to the SANS Faculty Slack workspace. See Exs. 9, 10, 11 & 14.

35. Mr. Lee has developed sicurity.ai and dfir.com as independent platforms for cybersecurity education and software distribution. The offerings on these websites include distribution of the SIFT Workstation through dfir.com and AI security instruction and practical lab resources using SIFT through sicurity.ai. These offerings are directed to digital forensics, incident response, and cybersecurity professionals, the same audience served by SANS' SIFT branded offerings identified in Paragraphs 30 and 32 above. SANS' continued use of the SIFT Mark is likely to cause confusion, mistake, or deception as to the source of the goods and services offered under the SIFT Mark and whether Plaintiffs sponsor or approve, or are affiliated with, SANS' courses.

36. SANS' conduct has deprived Plaintiffs of control over the SIFT Mark and SIFT Workstation and the reputation and goodwill it represents, including the ability to direct releases, manage contributors, and maintain community trust and has caused and will continue to cause Plaintiffs irreparable harm for which there is no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**(False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a)(1)(A)))**

37. Plaintiffs incorporate by reference Paragraphs 1 through 36.

38. Plaintiffs assert this Count based on Harbinger's ownership of the SIFT Mark.

39. Mr. Lee first used the SIFT Mark in commerce on October 11, 2007, and Plaintiffs have used it continuously since then to identify the SIFT Workstation software and its

instructional materials. Plaintiffs' use predates any use of the mark by SANS, which has used the SIFT Mark only with Plaintiffs' permission.

40. The SIFT Mark is valid and protectable. It is inherently distinctive as applied to forensic software and instructional materials, and the USPTO registered it on the Principal Register. The mark has also acquired distinctiveness through nearly two decades of continuous use. SANS' website reports more than "125,000 downloads of the SIFT Workstation." https://www.sans.org/tools/sift-workstation, and characterizes it as "the most popular" download on the SANS website. See SIFT Workstation, SANS Inst., https://www.sans.org/tools/sift-workstation.

41. SANS uses the SIFT Mark in commerce to advertise, promote, sell and distribute its courses, course materials, virtual machines and related goods and services throughout the United States.

42. On November 3, 2026, Harbingers directed SANS to cease using the SIFT Mark in new materials immediately and to remove it from existing materials within thirty (30) days.

43. SANS markets and distributes course-specific virtual machines and instructional materials bearing the SIFT Mark as part of its paid courses. Its Courseware Licensing Agreement identifies SIFT as a trademark of Harbingers and represents that SANS uses it with permission. SANS's continued use of the SIFT Mark together with its representation of permission is likely to cause and is causing confusion concerning whether Harbingers continues to authorize, sponsor, or approve those SIFT-branded offerings.

44. SANS' conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

45. SANS is acting knowingly and willfully. For years, SANS has acknowledged in

writing that Harbingers owns the SIFT Mark. Despite this, it has continued to use it since Plaintiffs terminated SANS' license to use it.

46. Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116(a), including the rebuttable presumption of irreparable harm that statute provides, and to an award of SANS' profits, Plaintiffs' damages, and costs under 15 U.S.C. § 1117(a). Plaintiffs seek enhanced damages as permitted by 15 U.S.C. § 1117(a), and reasonable attorneys' fees upon a finding that this case is exceptional.

**<u>SECOND CAUSE OF ACTION</u>**
**(Common-Law Trademark Infringement)**

47. This Count incorporates Paragraphs 1 through 46.

48. Plaintiffs own common-law rights in the SIFT Mark throughout the United States, including in Maryland, by virtue of their continuous use of the mark since October 11, 2007. That use includes SANS' permitted, pre-termination use of the mark in courses that SANS offered from its Maryland headquarters, which inured to Plaintiffs' benefit.

49. The SIFT Mark is distinctive and protectable.

50. SANS uses the SIFT Mark and the Digital Assets without authorization to advertise, sell and distribute its courses and related goods and services from its headquarters in Montgomery County, Maryland.

51. SANS continues to use the SIFT Mark to advertise, promote, and sell its courses. As of the date of this filing, SANS' course pages offer SIFT Workstation virtual machines as course deliverables.

52. SANS' continued use of the SIFT Mark is likely to cause and has caused confusion as to the source, sponsorship, or approval of SANS' goods and services, and constitutes trademark infringement under the common law of Maryland.

53. SANS acted knowingly, willfully, and with actual malice, in conscious disregard of Plaintiffs' rights, after acknowledging for years that the SIFT Mark belongs to Harbingers. Six days after it terminated Mr. Lee, SANS claimed the mark as one of its "Company Marks" and demanded that Mr. Lee surrender all SIFT-related assets. Exs. 10 & 11.

54. SANS' infringement has caused Harbingers damages, including the loss of the value of a license for SANS' continued use of the mark, and continuing irreparable harm to Harbingers' control over the mark and its goodwill. Harbingers is entitled to injunctive relief, compensatory damages and punitive damages.

**THIRD CAUSE OF ACTION**
**(Common-Law Unfair Competition)**

55. This Count incorporates Paragraphs 1 through 54.

56. SANS passes off the SIFT Workstation as its own product. Exs. 12 & 13. It calls the toolkit the "SANS SIFT Workstation," identifies SANS Institute as its creator, and no longer attributes the SIFT Mark to Harbingers.

57. SANS uses the goodwill that Harbingers built in the SIFT Mark over nearly two decades to sell courses that cost thousands of dollars each.

58. SANS acknowledged Harbingers' ownership of the SIFT Mark for years, and then, after it terminated Mr. Lee, claimed the mark as its own and demanded the transfer of all SIFT-related assets. These deceptive and unfair methods damage and jeopardize Harbingers' rights and business in the SIFT Mark, including its ability to license the mark and to control the reputation of the SIFT Workstation.

59. SANS' conduct is contrary to honest practice in commercial matters and constitutes unfair competition under the common law of Maryland.

60. SANS acted knowingly, willfully, and with actual malice. SANS knew that

Harbingers owns the SIFT Mark. For years, SANS acknowledged its ownership in its own Courseware Licensing Agreement and other publications. Six days after it terminated Mr. Lee, SANS claimed the mark as one of its "Company Marks" and demanded that Mr. Lee surrender all SIFT-related assets. Exs. 10 & 11. On information and belief, SANS claimed the mark to appropriate Harbingers' goodwill and to gain leverage in the Parties' dispute over Mr. Lee's separation, not because it believed it owned the mark.

61. SANS' unfair competition has caused Harbingers damages and continuing irreparable harm. Harbingers is entitled to injunctive relief, compensatory damages, and punitive damages.

**<u>FOURTH CAUSE OF ACTION</u>**
**(Declaratory Judgment (28 U.S.C. §§ 2201–2202))**

62. This Count incorporates Paragraphs 1 through 61.

63. An actual, substantial, and justiciable controversy exists between Plaintiffs and SANS concerning ownership of the SIFT Mark. SANS claims the SIFT Mark as one of its "Company Marks," asserts that it owns the trademarks it uses in commerce, and has demanded that Mr. Lee transfer all SIFT-related assets to SANS. Plaintiffs maintain that Harbingers owns the SIFT Mark and that SANS had used it only with Harbingers' permission.

64. Plaintiffs acquired the SIFT Mark through use that began in 2007. SANS acknowledged Harbingers' ownership and used the mark with Harbingers' permission. Neither the Author Agreement nor the Transition Agreement mentions or assigns the SIFT Mark.

65. Plaintiffs are entitled to a declaration that (a) Harbingers owns the SIFT Mark and all goodwill associated with it; (b) SANS owns no right, title, or interest in the SIFT Mark; (c) SANS' use of the SIFT Mark before November 3, 2026 inured to Harbingers' benefit as Harbingers' licensee; (d) neither the Author Agreement nor the Transition Agreement assigned

or licensed the SIFT Mark to SANS; and (e) any permission SANS had to use the SIFT Mark has terminated.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Enter judgment against Defendant SANS and in favor of Plaintiffs Harbingers and Mr. Lee, and award Plaintiffs compensatory damages, punitive damages, pre-judgment and post-judgment interest, and attorneys' fees and costs;

b. Declare that Harbingers owns the SIFT Mark and all goodwill associated with it; that SANS owns no right, title, or interest in the SIFT Mark; that SANS' prior use of the SIFT Mark inured to Harbingers' benefit; that neither the Author Agreement nor the Transition Agreement assigned or licensed the SIFT Mark to SANS; and that any permission SANS had to use the SIFT Mark has terminated;

c. Enter preliminary and permanent injunctive relief, including enjoining SANS, and its officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, from (1) using the SIFT Mark, any unauthorized SIFT-branded materials, or any confusingly similar mark (including "SANS SIFT Workstation"), whether through: (a) new course sales and enrollments; (b) OnDemand courses; (c) live and virtual training; (d) downloadable virtual machines, OVA images, USB distributions, lab environments and courseware; (e) third-party platforms distributing affected materials on SANS' behalf, including Egnyte and AWS/Azure Online Course Labs/Instances; and (2) from representing that SANS owns or controls the SIFT Mark;

d. Order SANS to remove the SIFT Mark from its courseware, virtual machines, websites, and marketing materials, and to deliver up for destruction all materials bearing the

SIFT Mark in its possession, custody, or control, under 15 U.S.C. § 1118;

e. Order SANS to reinstate Plaintiffs' access to and control over the GitHub account for the SIFT Workstation and all of their other Digital Assets;

f. Order SANS to file with the Court and serve on Plaintiffs, within thirty days after entry of an injunction, a written report under oath describing in detail the manner and form in which SANS has complied with the injunction, as provided in 15 U.S.C. § 1116(a), which report shall: (1) identify each course, virtual machine, software image, download, and distribution channel in which SANS used the SIFT Mark; (2) certify that SANS has ceased unauthorized SIFT-branded distribution; and (3) identify any remaining use of the SIFT Mark;

g. Award Plaintiffs SANS' profits attributable to its unauthorized use of the SIFT Mark, Plaintiffs' actual damages, and enhanced damages, under 15 U.S.C. § 1117(a); and

h. Grant such other and further relief as the Court may deem appropriate.

**JURY DEMAND**

Under Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 10, 2026

Respectfully submitted,

By: */s/ Connie N. Bertram*

Connie N. Bertram (Bar No. 14774)
BERTRAM LLP
1717 K Street, NW, Suite 900
Washington, DC 20006
Tel: (866) 456-1159
Fax: (202) 217-2611
cbertram@bertramllp.com

Counsel for Plaintiffs
Harbingers LLC and Robert T. Lee